**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

SHERI BUTLER BROCKINGTON, on     :
behalf of herself and others similarly situated,     :     CIVIL ACTION FILE NO. 1:25-cv-02881
                                                     :
　　　　Plaintiff,     :
                                                     :
v.     :
                                                     :
EDEN BRANDS INC.     :
                                                     :
　　　　Defendant.     :
                                                     :
_____/


**<u>PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS</u>**

## Table of Contents

**Introduction** ................................................................................................................ **1**

**Background** ................................................................................................................ **3**

**Argument** .................................................................................................................. **4**

    **I. Text Messages Are "Calls" Under the TCPA, As Nearly Every Court to Consider the Question Has Held** ......................................................................................... **4**

        **a. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages** ........................................................................ **6**

        **b. Section 227(c)(5) authorizes suit when those rules are violated** ................................ **8**

        **c. Even if the statute left room to doubt that a text message can be a violation, the FCC's longstanding interpretation of the word "call" should carry the day** ....................... **10**

        **d. The Applicable Standard Is the APA's Arbitrary-and-Capricious Review, and the FCC's Text-Message Clarification Easily Clears It** ..................................................... **13**

        **e. The other Federal Courts in New York that have considered this question got it right, including the Second Circuit Court of Appeals** ........................................... **18**

    **II. The Plaintiff Does Not Need to Allege that She Personally Registered Her Telephone Number on the National Do Not Call Registry…**.................................................. **21**

**Conclusion** ............................................................................................................... **24**

## Table of Authorities

**Cases**

*Abrahamian v. loanDepot.com LLC*, No. 23-cv-00728, 2024 U.S. Dist. LEXIS 44009

(D. Ariz. Mar. 13, 2024) ........................................................................................... 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 24

*Ashland Hosp. Corp. v. Serv. Employees Int'l Union*, 708 F.3d 737 (6th Cir. 2013) ............ 16

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87 (1983) ............................. 15

*Bank v. Simple Health Plans LLC*, 2019 U.S. Dist. LEXIS 215228 (E.D.N.Y. 2019) ........... 20

*Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ………..................... 5

*Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195 (D. Mass. 2021) ............................. 5

*Bosley v. A Bradley Hospitality LLC d/b/a La Mesa Miami*, No. 25-cv-22336, 2025 U.S.

Dist. LEXIS 183986 (S.D. Fla. Sept. 18, 2025) ........................................................... 2, 5

*Breda v. Cellco P'ship*, 934 F.3d 1 (1st Cir. 2019) .................................................... 4

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) ................................ 1

*Callier v. Am.-Amicable Life Ins. Co. of Tex.*, 2022 WL 17732717 (W.D. Tex. Oct.

18, 2022) ........................................................................................................ 22

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ...................................................... passim

*Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010) ...........................................14

*Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623, 2020 U.S. Dist. LEXIS 247921 (N.D.

Cal. July 22, 2020) ............................................................................................23

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986) ...................................... 6

*Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991 (8th Cir. 2018) ..................... 16

*Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477, 2025 U.S. Dist. LEXIS 167366 (N.D.

Fla. Aug. 26, 2025) ............................................................................................... 4, 9

*D.G. v. William W. Siegel & Assocs.*, 791 F. Supp. 2d 622 (N.D. Ill. 2011) ........................... 21

*Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) .............................................................. 4

*Duran v. La Boom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020) ....................................... 2, 19, 24

*Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 WL 4261442 (S.D. Fla. Oct. 19,
2010) ................................................................................................................. 16

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009) ....................................................... 6

*Gadelhak v. AT&T Servs.*, 950 F.3d 458 (7th Cir. 2020) .................................................... 4

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ............................................ 17

*Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983 (9th Cir. 2023) ............................................... 4

*Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617 (M.D. Fla. Aug. 15, 2025) ...... 12

*Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025) ...................................................... 7

*Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303 (11th Cir. 2025) ............................................ 4

*Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764 (C.D. Ill. July 21, 2025).......... 9, 15

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) ............................... 7, 16

*Klassen v. Solid Quote LLC*, No. 23-CV-00318, 2023 WL 7544185 (D. Colo. Nov.
14, 2023) ............................................................................................................. 21

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ........................................ 18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015) ...... 24

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) .............................................. 12, 19

*Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992 (N.D. Cal. July 12, 2024) .... 12

*Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014) ........................ 14

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) ............... 1, 4

iii

*Metten v. Town Sports Int'l, LLC*, 2019 WL 1299939 (S.D.N.Y. 2019) ................................... 20

*Murch v. GPS Cap. Mkts., LLC*, 2025 U.S. Dist. LEXIS 169651 (D. Or. June 6, 2025) ....... 22

*Nichols v. eHealthInsurance Servs.*, 2025 U.S. Dist. LEXIS 37917 (N.D. Cal.

Mar. 3, 2025) ..................................................................................................................23

*New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019) ........................................................ 9

*Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220 (S.D. Cal. 2014) ........................... 21

*Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575 (6th Cir. 2025) ............................ 12

*Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466 (S.D.N.Y. 2018) .................... 20

*Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15, 2022 WL 2713278 (N.D.

Iowa June 9, 2022) ........................................................................................................ 21

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ................................. 6, 7

*Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907 (W.D. Mich. 2018) ........................... 17

*Seven Cty. Infrastructure Coal. v. Eagle Cty.*, 145 S. Ct. 1497 (2025) ................................. 13

*United States v. Paulson*, 68 F.4th 528 (9th Cir. 2023) ........................................... 10

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) .......................... 17

*Watson v. Navient Sols., LLC*, 2022 WL 4586407 (S.D.N.Y. 2022) ................................... 21, 24


**Statutes and Rules**

Telephone Consumer Protection Act, 47 U.S.C. § 227 ................................................ passim

47 U.S.C. § 227(a)(4) ........................................................................................... 24

47 U.S.C. § 227(c)(1) ........................................................................................... 7, 17

47 U.S.C. § 227(c)(1)(D) ........................................................................................... 9

47 U.S.C. § 227(c)(1)(E) ........................................................................................... 12, 19

**47 U.S.C. § 227(c)(3)** ................................................................................. **1**

**47 U.S.C. § 227(c)(3)(F)** ........................................................................... **1**

**47 U.S.C. § 227(c)(5)** ...................................................................... **8, 9, 24**

**47 U.S.C. § 227(i)(1)(A)** ...................................................................... **5, 24**


**Regulations and Agency Decisions**

**47 C.F.R. § 64.1200(c)(2)** ............................................................... **18, 24**

**47 C.F.R. § 64.1200(e)** ................................................................................ **1**

**In re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd.**

**14014 (2003)** ................................................................................... **1, 11**

**In re Targeting and Eliminating Unlawful Text Messages, 38 F.C.C. Rcd.**

**12247 (2023)**……………………………………………………………………**1, 18**


**Other**

*Webster's College Dictionary* **(1991)** .......................................................... **7**

*Webster's Third New International Dictionary* **(2002)** .................................. **8**

*Webster's New Merriam-Webster Dictionary* **(1989)** ................................... **8**

*Webster's Oxford American Dictionary* **(1980)** ........................................... **7**

## Introduction

The Telephone Consumer Protection Act's provisions authorizing a nationwide Do Not Call List, 47 U.S.C. § 227(c), empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003); The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 F.C.C. Rcd. at 14115; *In re Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 (2023).

In the decades since FCC established the Do Not Call List and began enforcing those protections, over 200 million phone subscribers have come to rely on them. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–204 & n.5 (S.D.N.Y. 2024). Plaintiff Sheri Butler Brockington is one of them. So when Defendant Eden Brands, Inc. ("Defendant" or "Eden Brands") sent the Plaintiff telemarketing texts in violation of the FCC's rules, the Plaintiff brought this lawsuit to vindicate those rights and put a stop to Eden Brands's unwelcome and intrusive marketing practices.

Eden Brands has now filed a Motion to Dismiss, and it's one that makes a big ask of this Court. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So, Eden Brands

therefore asks this Court to reject the FCC's longstanding interpretations and hold that the Do Not Call List protects only voice calls, upending protections for potentially hundreds of millions of Americans.

This Court should decline that request. A fresh read of the statutory text confirms that listing their number on the Do Not Call List protects them from intrusive text messages, not just voice calls. Eden Brands asks this Court to substitute its judgment for Congress's and the FCC's largely because text messages didn't exist yet. But that is not how statutory interpretation works, and it's contrary to the plain meaning of the terms Congress used. And even if the statute itself weren't clear on this, later enactments and multiple express delegations of discretion to the FCC show that Congress would have intended the FCC's consistent and well-reasoned judgment to win out.

The Second Circuit has already treated text messages as "calls" for TCPA purposes. *See Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 88–89 (2d Cir. 2019) (recognizing FCC interpretation that texts are covered and relying on *Campbell-Ewald*), and *Duran v. La Boom Disco, Inc.,* 955 F.3d 279, 283–84 (2d Cir. 2020) (quoting *Campbell-Ewald*, "[i]t is undisputed that a text message…qualifies as a 'call'" and holding an unwanted text is a concrete injury). Those decisions align this Circuit with the Supreme Court's framing and the prevailing national consensus that texts fall within the TCPA's ambit. This has not changed. Indeed, a little more than a week ago, *Bosley v. A Bradley Hospitality LLC d/b/a La Mesa Miami*, Case No. 25-cv-22336-BLOOM/Elfenbein, 2025 U.S. Dist. LEXIS 183986 (S.D. Fla. Sept. 18, 2025) confirmed that "a text message constitutes a 'call' under the TCPA." *Id.*

Defendant's remaining argument fares no better. Courts have long recognized that registration attaches to the telephone number itself, not to a particular subscriber, and that the

Registry listing must "be honored indefinitely" unless affirmatively removed. Accepting Eden's theory would gut the statute, stripping protections from millions of consumers who inherit previously registered numbers, despite Congress's clear intent to afford privacy rights to subscribers, not registrants.

The Defendant's motion to dismiss should be denied.

## Background

Congress enacted the TCPA to address the proliferation of unwanted and intrusive telemarketing calls, recognizing that such practices invade consumer privacy and cause substantial harm (ECF No. 22 ("First Am. Compl.") ¶¶ 1–2). To empower individuals, the statute authorized the creation of the National Do Not Call Registry, enabling subscribers to signal their desire not to receive telemarketing solicitations. Once a number is placed on the Registry, that listing "must be honored indefinitely" unless the consumer cancels it or the database administrator removes it (First Am. Compl. ¶ 21). Section 227(c)(5) provides a private right of action to persons who, despite their listing on the Registry, continue to receive unlawful telemarketing contacts.

Plaintiff Sheri Butler Brockington acquired her personal telephone number ending in 423-718 in December 2023. That number, however, had been on the National Do Not Call Registry since 2013—ten years prior to Plaintiff's acquisition (First Am. Compl. ¶¶ 14–15). Because the Registry is permanent and tied to the telephone number, Plaintiff's number remained protected at the time Eden began contacting her. Despite the Registry listing and despite Plaintiff never providing her number to Eden or consenting to solicitations, she received repeated telemarketing text messages from Eden in June through November 2024 (First Am. Compl. ¶¶ 26–27). Plaintiff uses this number for purely personal purposes and not for business; the

unwanted solicitations disrupted her privacy, consumed her phone resources, and caused annoyance and harassment (First Am. Compl. ¶ 30).

## Argument

### I.    Text Messages Are "Calls" Under the TCPA, As Nearly Every Court to Consider the Question Has Held.

Defendant contends that a text message is not a "call" under the TCPA and that the FCC overstepped when it interpreted a "call" to include text messages. The Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 145 S. Ct. 2006 (2025), disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".); *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, at n.2 (11th Cir. 2025) ("We use the terms 'robocalls' and 'robotexts' as shorthand for calls and texts made 'using any automatic telephone dialing system or an artificial or prerecorded voice'—*i.e.*, the calls and texts that the TCPA regulates….We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages."); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Breda v. Cellco Partnership*, 934 F.3d 1, n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact.").

Defendant relies on the recent order in *Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025); one of two cases that refused

to apply the above cited longstanding precedent. Contrary to what the court held in *Davis*, the Supreme Court's holding in *Campbell-Ewald* is not mere dicta. "The Supreme Court ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA in *Campbell-Ewald v. Gomez* [.]" *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021). Indeed, "it is unlikely that the Court would stay silent about any serious concerns that robotexts were an invalid ground for TCPA recovery in a case construing the same statute." *Id*. at 199. "Furthermore, in the most recent term Justice Kavanaugh's plurality opinion in *Barr* cited the FCC's regulations applying the TCPA to text messages as the current applicable legal standard." *Id*. (citing *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S.Ct. 2335, 2344 n.1, 207 L. Ed. 2d 784 (2020)). "The First, Second, Seventh, Ninth, and Eleventh Circuits have either adopted Judge Ginsburg's remark as black letter law rather than dicta or had already held that the TCPA included text messages before *Campbell-Ewald*." *Id*. at *6 (collecting cases).

Indeed, a little more than a week ago, *Bosley v. A Bradley Hospitality LLC d/b/a La Mesa Miami*, Case No. 25-cv-22336-BLOOM/Elfenbein, 2025 U.S. Dist. LEXIS 183986 (S.D. Fla. Sept. 18, 2025) confirmed that "a text message constitutes a 'call' under the TCPA." *Id.* This ruling is consistent with the overwhelming majority of decisions nationwide.

"In addition to the Supreme Court and the FCC, *Congress* has also made clear the TCPA's applicability to text messages." *Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) (emphasis added). Specifically, when Congress amended the TCPA in 2019 with the TRACED Act, it adopted the FCC's interpretation, instructing the FCC to prescribe regulations related to "a call made or *a text message sent* in violation of [227(b).]" 47 § 227(i)(1)(A) (emphasis supplied).

"Congress is presumed to be aware of an administrative or judicial interpretation of a

statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009). "Where, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986). When Congress amended the TCPA in 2019, not only was it aware that the FCC and every court had interpreted the statute to cover text messages, it *ratified* that interpretation with an explicit reference to text messages in the amendment. Because Congress has spoken directly on the issue, the application of the TCPA to text messages is all but conclusive and reason alone to reject Defendant's position.

### a. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages. As further explained below, the word "call" in the TCPA encompasses text messages. *See infra*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("we hold that a text message is a 'call' within the TCPA"). That interpretation follows from "the ordinary, contemporary, common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" alone weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed *all* sorts of communication, both spoken *and* written. *See* Black's Law Dictionary, 6th Ed. ("any notice, word, or communication, no

matter the mode and no matter how sent, from one person to another").[1] More generally, the definition of "telephone solicitation" focuses not on the form of a communication but whether it is made "for the purpose of encouraging" a commercial transaction. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025). So Congress referred to "call or message" disjunctively to broadly capture a wide range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

The purpose and structure of the Do Not Call List provisions supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). To be sure, as Defendant emphasizes, Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly cover any "telephone solicitation," which is expressly defined to include any "call *or message*." 47 U.S.C. § 227(a)(4). That breadth reflects Congress's choice to regulate solicitations by effect (commercial encouragement) rather than by transmission modality. See 47 U.S.C. § 227(a)(4); *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025).

> ### b. *Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated.*

---

[1] *See also, e.g.*, Webster's College Dictionary (1991) ("a communication delivered in writing, speech, by means of signals, etc."); Oxford English Dictionary, 2d Ed. (1989) ("a communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another"); Oxford American Dictionary (1980) ("a spoken or written communication").

Section 227(c)(5) grants a right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

It is well established that the word "call" in the TCPA includes text messages. As the Ninth Circuit has explained, the "ordinary, contemporary, common meaning" of the word "call" is simply "to communicate or try to get into communication with a person by a telephone." *Satterfield*, 569 F.3d at 953–54 & n.3 (quoting Webster's Third New International Dictionary 318 (2002)).[2] Accordingly, the FCC has recognized since 2003 that when the statute says "call," it means not only traditional voice calls but also modern text messages. 18 F.C.C. Rcd. at 14115 ¶ 165 (defining telemarking calls to encompass both).

That meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to

---

[2] *See also, e.g.*, Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); The New Merriam-Webster Dictionary (1989) ("to get or try to get in communication with by telephone"); Oxford English Dictionary, 2d Ed. (1989) ("a summons or communication by telephone").

"calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a "telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4); *see supra*.[3]

Neighboring provisions confirm the same usage. See § 227(b)(1)(A) (using "call" for transmissions to cellular telephones and paging services). To the extent *Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764 (C.D. Ill. July 21, 2025), suggested otherwise, it relied on contemporary parlance rather than the term's ordinary meaning at enactment—an approach the Supreme Court has warned against. See *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). But that gets statutory interpretation wrong in two important ways. First, as the Supreme Court has warned, "modern intuition" doesn't always match "evidence of a term's meaning at the time of [a statute]'s enactment." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). *Jones* and other cases go astray when they reflexively apply present-day intuitions about how text messages are discussed to language from 1991, before the first text message was ever sent.[4] And second, as explained above, it's irrelevant that Congress didn't have text messages specifically in mind in 1991. *See supra* (citing cases). "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Wilson,* 2025 WL 2029274, at *4.

---

[3] Because § 227(c)(1)(D) confirms that the variation between Congress's use of a "call or message" in § 227(a)(4)'s capacious definition and its use of "call" in § 227(c)(5) is immaterial, the one district court that recently relied on this distinction to adopt a restrictive interpretation is unpersuasive. *Contra Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025).

[4] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at *1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to refer to a message sent to a "paging service," the most analogous type of text-message-like communication in 1991).

*Jones* also disregarded the FCC's longstanding interpretation of "call" to include text messages because the FCC, until 2023, had only articulated that interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising. The Do Not Call List provisions are built around the defined term "telephone solicitation," so the standalone word "call" is much more extensively used in § 227(b)'s autodialer and robocall prohibitions, or in associated definitional provisions.[5] That's why the FCC first determined that "call" includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); *In re: Targeting and Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800, 20802 ¶ 6 (2023); *In re: Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 ¶ 26 (2023). But that doesn't mean there's any daylight between § 227(b) and § 227(c) on this particular question, and neither *Jones* nor Defendant identifies any. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text"). In fact, reading the word "call" differently in § 227(c)(5) than in neighboring provisions would make no sense. *See, e.g.*, 38 F.C.C. Rcd. at 12257 (rejecting that "anomalous" interpretation). If Congress intended to cabin § 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have conveyed that by using a term that elsewhere in the statute *includes* them.

       *c.* ***Even if the statute left room to doubt that a text message can be a violation (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day.***

Since 2003, the FCC held that text messages constitute calls within the meaning of

---

[5] *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a) (using "call" or "calls" in the original text of 47 U.S.C. §§ 227(a)(1), 227(a)(3), 227(b)(1)(A), 227(b)(1)(B), 227(b)(2)(A), 227(b)(2)(B), 227(c)(1)(D), 227(c)(5), 227(d)(1)(A), 227(d)(3)).

the TCPA. *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls") (the "2003 Order"). In *Satterfield*, the Ninth Circuit found that the FCC's interpretation was reasonable and consistent with the dictionary's definition of "call," how text messages are sent and used, and the purposes of the TCPA. 569 F.3d at 954.

To be sure, mere ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). But courts still defer when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id.* at 395. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within those outer bounds. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

This case falls at the intersection of *two* such express delegations. Mainly, § 227(c) itself is an express delegation of rulemaking discretion to the FCC: Congress tasked the FCC with evaluating alternative approaches based on (among other things) their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). It then told the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphases added). That language grants discretionary authority to "fill up the details," accompanied by "flexibility" to determine what rules will best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395.  Congress in 1993 asked the FCC to decide whether cell phone

11

companies are "common carriers" whose subscribers have rights under the TCPA, and the FCC did. *Compare* 47 U.S.C. § 332(a)(1)(A), *with* 47 U.S.C. § 227(c)(3). That expressly delegated the FCC "authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 395. If Congress didn't speak on this issue, then it clearly looked to the FCC's expert judgment to supply an answer. *See U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016) (express delegation was evidence that Congress expected telecommunications technology to evolve).

It follows that the way to honor Congress's intent here is to "respect [that] delegation" and affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395. Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone numbers, even after *Loper Bright* and *McLaughlin*. *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Wilson*, 2025 WL 1784815, at *5; *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). This Court should do the same.

As explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. *See supra*. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and aligns with both its longstanding determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 F.C.C. Rcd. at 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm that "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this Court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at

139–40).

In any event, the FCC's interpretation is, at the very least, an "informed judgment" that should be accorded "great weight" by this court. *Loper Bright*, 603 U.S. at 388; *see Skidmore v. Swift Co.*, 323 U.S. 134, 139–40 (1944). The FCC's position is grounded in the agency's specialized expertise, consistent across decades, and well-reasoned. So, it has all the hallmarks of an agency decision with "the power to persuade." *Loper Bright*, 603 U.S. at 388.

### d.   The Applicable Standard Is the APA's Arbitrary-and-Capricious Review, and the FCC's Text-Message Clarification Easily Clears It.

Contrary to Defendant's contention, "when an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard. ***Under that standard, a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained***." *Seven Cty. Infrastructure Coal. v. Eagle Cty.*, 145 S. Ct. 1497 (2025) (emphasis added) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-392) (citing *Motor Vehicle Mfrs. Ass'n of United States, Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 463 U. S. 29, 43 (1983); *see also Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("We consider a challenge to the agency's decision making under the APA's arbitrary-and-capricious standard next. But because Congress granted the FCC discretion to interpret Section 202(h) within the public interest, we decline to grant the petition on the basis that the FCC's definition of 'competition' is inconsistent with Section 202(h).").

Under the correct standard of review, it cannot be said that the FCC, under its grant of authority from Congress, acted unreasonably or inconsistent with the statute when it extended the TCPA's protections, including the DNC Provision, to texts. ***Congress adopted the FCC's interpretation*** when it amended the TCPA. *See Williams v. Myler Disab., LLC*, No. 3:20-cv-

00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) ("In addition to the Supreme Court and the FCC, **Congress** has also made clear the TCPA's applicability to text messages.") (citing *TRACED Act*, PL 116-105, December 30, 2019, 133 Stat 3274. The Supreme Court and every Circuit Court have so agreed.

In *Davis*, the court applied the wrong standard of review, relying instead on *McLaughin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). *See* 2025 U.S. Dist. LEXIS 167366, at *9 (N.D. Fla. Aug. 26, 2025). The applicable standard is not "appropriate respect" as the *Davis* court held, but instead an inquiry into whether the FCC acted reasonably and reasonably explained its exercise of discretion. Such is the case here because Congress instructed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S. Code § 227(c)(1) (titled "Protection of Subscriber Privacy Rights").

Indeed, "Congress vested the FCC with considerable authority to implement the Telephone Act." *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010). In furtherance of that goal, Congress directed the FCC to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F. 3d 1110, 1123 (11th Cir. 2014) (citing 47 U.S.C. § 227(c)(1)(E)). Because the FCC exercised its discretion granted by statute and was rulemaking, the APA's deferential arbitrary-and-capricious standard applies. To be sure, "[t]he scope of this review 'is narrow,' and [we] must exercise appropriate deference to [the FCC's] decisionmaking and not substitute [our] own judgment for that of the [Commission]." *Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025).

Under this standard, it cannot be said that the FCC's action was unreasonable or not

reasonably explained. In the 2023 Order, the FCC explained its reasoning for clarifying and codifying the DNC protections to cover text message solicitations:

> Consumers increasingly rely on text messaging to stay in touch with friends and family, to do business, communicate with their child's school, and get information from their government. On many devices, people immediately see some or all of the messages once received on the device, whereas they have the option to ignore unwanted calls. This causes consumers to open their texts quickly because texts are an expected trusted source of communications, not annoyance and scams. The rise of junk texts jeopardizes consumer trust in text messaging[,] frustrate[s] consumers, and [causes] serious harm.

*Id.* at ¶1. Accordingly, "the Commission has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *See Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983).

In fact, in *Jones v. Blackstone Med. Servs., LLC*, which Defendant cites in support of its motion, court found "[t]he Plaintiffs' position — that text messages are calls as the latter term is used in the TCPA — ***is an eminently reasonable one***, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today." No. 1:24-cv-01074-JEH-RLH, 2025 U.S. Dist. LEXIS 138371, at *14 (C.D. Ill. July 21, 2025) (emphasis supplied). Defendant concedes that for another section of the statute, it is not unreasonable to include texts as calls.

Had the court in that case applied the correct standard of review to the FCC's action, it should have followed the FCC's interpretation because nothing about it is arbitrary and capricious. *See Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("An agency action may be arbitrary and capricious in many ways: by (1) 'rel[ying] on factors which Congress has not intended it to consider,' (2) 'entirely fail[ing] to consider an important aspect of the problem,' (3) 'offer[ing] an explanation for its decision that runs counter to the evidence before the agency,' or (4) offering an explanation that 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" (quoting *Citizens Telecomms. Co. of Minn., LLC v.*

*FCC*, 901 F.3d 991, 1000 (8th Cir. 2018)).

Even under the standard Defendant advances, this Court should "afford[] appropriate respect to the agency's interpretation." *Loper Bright*, 603 U.S. at 402). As *Loper Bright* explains, a court may apply "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." *Id.* Because, as discussed above, Congress empowered the FCC to decide how to apply a statutory term to specific facts, the FCC's interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. This court should therefore, "unhesitatingly afford deference to the [FCC] holding that a text message should be treated as a 'call' for purposes of the TCPA." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015).

Moreover, as explained, the FCC's interpretation of a text message being a call is not at odds with the statute. Because the TCPA does not define the term "call", courts interpret the word "according to its 'ordinary, contemporary, common meaning.'" *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019) "[T]he dictionary definition of 'call' [i]s 'to communicate with or try to get into communication with a person by a telephone.'" *Id.* (quoting *Satterfield*, 569 F.3d at 953-54). "Other courts have adopted this definition in the TCPA context." *Id.* (citing *Ashland Hosp. Corp. v. Serv. Employees Int'l Union*, 708 F.3d 737, 742 (6th Cir. 2013); *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010)).

The transmission of a text message to a consumer's telephone falls squarely within the definition of the word "call" as the purpose is to communicate with the person via their telephone. *See Satterfield*, 569 F.3d at 954 ("It is undisputed that text messaging is a form of communication used primarily between telephones."). Moreover, "[b]oth the FCC and the courts have recognized

16

that the scope of the TCPA naturally evolves in parallel with telecommunications technology as it evolves, *e.g.*, with the advent of text messages." *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018).

The Court in *Wilson v. Skopos Fin., LLC*, 2025 U.S. Dist. LEXIS 138638, *10-13 (D. Or. July 21, 2025) denied an identical motion to dismiss holding:

> [T]he FCC's decision to include text messages is congruent with Congress's overarching goals for the TCPA. Congress enacted the TCPA "to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk to public safety." *2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14018. Section 227(c) specifically targets "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1). With those goals in mind, the "basis" for the FCC's conclusion becomes abundantly clear: unsolicited text messages invade the privacy and disturb the solitude of their recipients. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). They should therefore be included within the purview of the DNC Registry's protections. It cannot be argued in good faith that text messages are so categorially different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry.. . . On this point, Defendant is without support. The Court concludes that unsolicited text messages sent in violation of the DNC Registry can give rise to a cause of action under § 227(c)(5).

This Court should hold the same.

Defendant's request to exclude text messages from the protections afforded consumers under the TCPA also ignores that "the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). The outcome Defendant requests – allowing companies to spam consumers with unwanted text messages even after requests for the messages to stop – would result in that harm. Congress intended for the privacy protections of the TCPA to cover new technologies by leaving the term "call" undefined thereby allowing the statute to continue to protect consumers. This Court should, respectfully, reject Defendant's myopic interpretation of the statute that would render it moot.

17

e. *The other Federal Courts in New York that have considered this question got it right, including the Second Circuit Court of Appeals.*

The DNC Registry was designed as a simple, consumer-driven mechanism: if a telephone number is listed, it is off limits for telemarketing. See *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019) (Congress intended a "straightforward provision designed to achieve a straightforward result"). Congress intentionally made registration indefinite and number-based to ensure that the protections were broad, durable, and easy to administer. 47 C.F.R. § 64.1200(c)(2).

Defendant's position would undermine that system if text messages were excluded from § 227(c)'s protections, telemarketers could simply bypass the Registry by shifting from voice calls to texts. That is precisely what has happened in the modern marketplace: while robocalls are now subject to tighter enforcement, robotexts have surged. As the FCC recognized in 2023, "[t]he rise of junk texts jeopardizes consumer trust in text messaging, frustrates consumers, and causes serious harm." *In re Targeting and Eliminating Unlawful Text Messages*, 38 FCC Rcd. 12247, 12256 ¶ 26 (2023). To read texts out of the TCPA would be to leave the dominant form of telemarketing today outside the very privacy protections Congress created.

Luckily for consumers, the federal courts in this District and Circuit have gotten the analysis correct. This starts with the Second Circuit Court of Appeals. First, in *Melito v. Experian Mktg. Solutions, Inc.,* 923 F.3d 85, 88 (2nd. Circ. 2019) ("The TCPA delegated the authority to implement these requirements to the Federal Communications Commission (the "FCC"). *See* 47 U.S.C. § 227(b)(2). Although text messages are not explicitly covered under the TCPA, the FCC has interpreted the Act to cover them. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571

18

(2016) ('A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of  [*89]  § 227(b)(1)(A)(iii).')")

Second, *Duran v. La Boom Disco, Inc.,* 955 F.3d 279, 280 (2nd Cir. 2020) continued, "[i]t is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].' *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016). Moreover, an unwanted text message is, for standing purposes, an injury-in-fact. *See Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (noting that 'text messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA')."

To be clear, the fact that the Second Circuit in *Melito* and *Duran* relied in part on the FCC's interpretation does not diminish the continuing force of those decisions. Those cases rested on the statutory text and Supreme Court precedent, and the FCC's interpretation was cited as additional support. Post-*Loper Bright*, that structure remains entirely sound: courts first look to the statute, then confirm with agency expertise where Congress has expressly delegated implementation authority. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (explaining that courts must "respect [a] delegation" and review agency action for reasoned decision making under the APA). The TCPA is a textbook example of such a delegation, authorizing the FCC to adopt the rules "most effective and efficient to accomplish the purposes" of the Act. 47 U.S.C. § 227(c)(1)(E). Thus, while the FCC's views are no longer binding under Chevron, they continue to warrant substantial weight under *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944), particularly where the agency's position has been consistent for decades, rooted in technical expertise, and repeatedly ratified by Congress through amendments like the

19

TRACED Act. Post-*Loper* principles therefore still counsel respect for the FCC's reasoned judgment, which aligns with both the statute's plain meaning and the Second Circuit's own precedents.

It is no surprise then that "in this Circuit, district courts have treated text messages as 'calls' within the meaning of the TCPA. *See Melito v. Am. Eagle Outfitters, Inc.,* No. 14 CV 02440, 2015 U.S. Dist. LEXIS 160349, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) ('The plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that 'make' a telephone call or text.'); *see also Jackson v. Caribbean Cruise Line, Inc.,* 88 F. Supp. 3d 129, 135 (E.D. NY. 2015)." *Krady v. Eleven Salon Spa*, 2017 U.S. Dist. LEXIS 120139, *7 (E.D. N.Y. 2017). "Courts have consistently recognized that a text message constitutes a call within the meaning of the statute. *See, e.g., Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 474 (S.D.N.Y. 2018); *Metten v. Town Sports Int'l, LLC*, No. 18-CV-4226 (ALC), 2019 U.S. Dist. LEXIS 47138, 2019 WL 1299939, at *2 (S.D.N.Y. Mar. 21, 2019). Therefore, the text message that Plaintiff received qualifies as a call for which TCPA liability may lie." *Bank v. Simple Health Plans LLC*, 2019 U.S. Dist. LEXIS 215228, *13 (E.D. NY. 2019).

The Second Circuit and district courts within it have spoken with one voice: text messages qualify as "calls" under the TCPA and are subject to the same restrictions as voice solicitations. Excluding texts from the Registry would nullify Congress's protections, allow telemarketers to exploit the dominant form of communication today, and erode consumer trust. Because the statutory text, the FCC's consistent interpretation, and binding precedent all confirm that texts fall within the TCPA's scope, Defendant's attempt to carve out an exception must be rejected. The Registry continues to protect numbers, not loopholes.

**II.    The Plaintiff does not need to allege that she personally registered her telephone number on the National Do Not Call Registry.**

Nor do the provisions of the TCPA require that one *personally register* their number on the Do Not Call Registry because that fact would be *impossible to prove*, as the FTC is neither authorized to nor collects such information. For that matter, such a holding would also run afoul of the 2003 TCPA Order, which explicitly noted that "the only consumer information telemarketers and sellers will receive from the national registry is the registrant's telephone number. *This is the minimum amount of information that can be provided* to implement the national registry." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14037 (emphasis added). Registering a telephone number on the Registry does not require the provision of any personally identifiable information, and requiring such information would defeat the purposes of registration, consumer privacy. Thus, as an initial matter, the government is *not even authorized* to collect the information the Defendant claims the Plaintiff is required to prove as a legal matter. It follows that proving such information cannot be an element of a TCPA claim.

Relying on *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), the Defendant misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, in addition to requiring the government to collect information it isn't even legally authorized to collect, *Rombough* purports to require some TCPA

plaintiffs to do the impossible–personally *re*register a number already on the Registry. It has been disagreed with by every other court to consider it and its premises. *See, e.g.*, *Watson*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022) (holding that "whether each class member registered their number on the NDNCR is irrelevant."); *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023); *D.G. v. William W. Siegel & Assocs.,* 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) ("Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a "called party" under the TCPA."); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014) ("Defendant seeks to arbitrarily limit standing to only the individual whose name appears on the bill. Notably, Defendant does not cite a single case to support this position. Further, this position has been rejected by other courts.").

     *Rombough* was most notably rejected in *Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022), where the Western District of Texas called the argument underlying the *Rombough* decision one that "borders on the frivolous." The *Callier* court went on to state:

> *Rombough's* nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated: it is a list of phone numbers for individuals who have requested that telemarketers not contact them. While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. And it is particularly unlikely here given Plaintiff's well-documented desire that telemarketers respect his registration with the DNC.

*Id.* at *6 (cleaned up). The *Callier* Court is far from alone. *See e.g. Murch v. GPS Cap. Mkts., LLC,* 2025 U.S. Dist. LEXIS 169651, *38 (D. Or. June 6, 2025) ("After fully considering the TCPA's private right of action, the statutory scheme, and other language in the implementing regulation as discussed above, the Court declines to follow *Rombough*."). Indeed, three years after *Callier*, another federal court recently made forcefully clear how far of an outlier

*Rombough* was:

> the Court holds that a plaintiff alleging a violation of the TCPA's NDNC Registry provision need not allege or prove that he personally registered his phone number to state a claim. Every court to consider this issue — with one exception — has reached the same conclusion. *See, e.g., Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921, 2020 WL 7391299, at *14 (N.D. Cal. July 22, 2020); *Abrahamian v. loanDepot.com LLC*, No. 23-cv-00728-PHX-SMB, 2024 U.S. Dist. LEXIS 44009, 2024 WL 1092442, at *2 (D. Ariz. Mar. 13, 2024). The exceptional case is *Caitlin Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-cv-15-CJW-MAR, 2022 U.S. Dist. LEXIS 124614, 2022 WL 2713278, at *2-3 (N.D. Iowa June 9, 2022) (dismissing claim because plaintiff did not allege that she personally registered her phone number in the NDNC Registry). In *Rombough*, the court focused on the following language from the implementing regulation: "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber *who has registered* his or her telephone number on the" NDNC Registry." 47 C.F.R. § 64.1200(c) (emphasis added). This language was viewed in isolation, and the court did not explain how its construction could be reconciled with the very next sentence of the implementing regulation, which provides that "registrations must be honored indefinitely[.]" *Id.* There is no limitation as to time period; nor is there a limitation as to whether the phone number is still used by the person who originally listed it in the NDNC Registry.

*Nichols v. eHealthInsurance Servs.*, 2025 U.S. Dist. LEXIS 37917, *8-9 (N.D. Ca., March 3, 2025). This Court should hold the same.

The policy consequences of Defendant's rule underscore its untenability. Millions of Americans change phone numbers every year. If Eden's theory were correct, each consumer inheriting a number that had already been placed on the Registry would lose their protections. Telemarketers could then flood those numbers with impunity, despite Congress's intent to stop unwanted solicitations. Nothing in the statute, regulations, or case law supports this loophole, and this Court should not create one.

Accordingly, the Court should reject Defendant's invitation to import a personal-registration requirement that appears nowhere in the statute and would eviscerate its protections.

**Conclusion**

The question presented by Defendant's motion is narrow and the answer is clear. The TCPA's Do Not Call provisions regulate "telephone solicitations," a term Congress defined to encompass the initiation of a "telephone call or message … transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). Read together with § 227(c)(1), (3)(F), and (5), that text leaves no daylight for the carve-out Defendant seeks. The Supreme Court has recognized that a text message "qualifies as a 'call,'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156–57 (2016), and the Second Circuit has treated unwanted texts as covered communications and concrete injuries, *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88–93 (2d Cir. 2019); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 283–84 (2d Cir. 2020). Congress then confirmed that settled understanding when it enacted the TRACED Act and referenced "a call made or a text message sent" in the same breath, 47 U.S.C. § 227(i)(1)(A)—a ratification that is inconsistent with Defendant's attempt to rewrite the statute for the SMS era.

Defendant's contrary theory—which would exclude text messages from § 227(c) and thereby invite telemarketers to route around the Do Not Call Registry—cannot be reconciled with the statute's structure or purpose. Congress designed the Registry to be simple and effective: when a number is listed, telemarketing is off-limits. *See* 47 C.F.R. § 64.1200(c)(2) (registrations "must be honored indefinitely"). That number-based, indefinite protection is what allows the Registry to function at scale for the more than 200 million subscribers who rely on it. Reading texts out of the DNC protections would convert that straightforward mechanism into a loophole, not a shield—precisely the outcome Congress sought to avoid when it targeted "telephone solicitations" by effect (commercial encouragement) rather than by the technology used to transmit them. *See* 47 U.S.C. § 227(a)(4), (c)(1).

24

Defendant's attempt to recast *Melito* and *Duran* as fragile "deference" cases also misses the mark. The Second Circuit grounded those decisions in the statutory text and *Campbell-Ewald*; the FCC's interpretation was confirmatory, not dispositive. 923 F.3d at 88–89; 955 F.3d at 283–84. Post-*Loper* principles therefore change nothing material here: this Court should read the statute first, as the Second Circuit did, and it will arrive at the same destination. The Commission's rule then supplies additional and persuasive support, not a premise on which the conclusion uniquely depends.

Defendant's "personal registration" argument fares no better. The DNC protections run with the number, not a particular individual, and registrations must be honored "indefinitely … unless … cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200(c)(2). Courts within and beyond this Circuit have rejected efforts to transform that number-based regime into a personalized proof requirement that neither the rules nor common sense support. *See, e.g.*, *Watson v. Navient Sols., LLC*, 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022) (whether a class member personally registered "is irrelevant").

Adopting Defendant's view would depart from the statute's text, Supreme Court guidance, Second Circuit precedent, the Commission's longstanding interpretation, and the prevailing practice in this District. It would also risk an outlier result that disrupts uniform TCPA enforcement and invites easy end-runs around the DNC regime by shifting solicitations from calls to texts. A faithful reading avoids those pitfalls and preserves the number-based, durable privacy protection Congress designed and millions of consumers rely upon.

Date: September 28, 2025

/s/ Anthony Paronich

Anthony I. Paronich, *pro hac vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff and the proposed class*